1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RANDOLPH DIAZ,

11            Plaintiff,                     No. 2:10-cv-01388 MCE KJN P

12        vs.

13   M. MARTEL, et al.,

14            Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a prisoner incarcerated at Mule Creek State Prison ("MCSP"), under

17   the authority of the California Department of Corrections and Rehabilitation ("CDCR").

18   Plaintiff proceeds without counsel, and in forma pauperis, in this civil rights action filed pursuant

19   to 42 U.S.C. § 1983.  The court previously dismissed two of the named defendants, based on the

20   finding that plaintiff's complaint fails to state any potentially cognizable claims against them.

21   (See Dkt. Nos. 16, 20.)  The action now proceeds against defendants Dr. W. Hashimoto

22   ("Hashimoto") and Dr. Christopher Smith ("Smith").  Currently before the court is defendants'

23   motion to dismiss.  (Dkt. No. 22.)  Plaintiff filed an opposition (Dkt. No. 30); defendants filed a

24   reply (Dkt. No. 33).  For the following reasons, this court recommends that defendants' motion

25   be granted in part, and denied in part.

26   ////

I.      Background

        This action proceeds on plaintiff's First Amended Complaint ("complaint"), filed

on July 14, 2011.  (Dkt. No. 14 ["compl."].)  Attached thereto are, inter alia, copies of plaintiff's

pertinent administrative grievances.  The court sets forth the relevant allegations of the

complaint.

        Plaintiff's claims against Hashimoto and Smith are premised on his allegation that

he received inadequate medical attention in the wake of a vehicle accident he was involved in on

October 2, 2008.  More specifically, plaintiff alleges that he was a passenger in restraints in a

medical transport van en route to an outside medical facility when the van was rear-ended at an

intersection by another medical transport van.  Plaintiff further alleges that, as a result of this

accident, he "sustained neck, back, shoulder injury pain and . . . frequent headaches [and] dizzy

spells." (Compl. at 3.)  In connection with this accident, plaintiff claims that he sought medical

treatment from medical staff at MCSP, but that the treatment he received "failed to remedy" his

alleged ailments and that the staff continued to "downplay or disregard" his complaints.  (Id.)

Hashimoto was one of plaintiff's treating doctors and was the doctor who interviewed plaintiff in

connection with the First Level Review of plaintiff's pertinent administrative grievance.  Smith

was the medical director at MCSP and had signed the denial of plaintiff's request for medical

authorization to receive an MRI of his right shoulder.  Based on a liberal construction of the

amended complaint and supporting exhibits, plaintiff contends that both defendants were

deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth

Amendment, and acted negligently in their medical care of plaintiff, in violation of California

state tort law.  Plaintiff seeks proper medical treatment and damages against both defendants.

        Defendants raise several arguments in support of their motion to dismiss.  The

court address the merits of defendants' motion in the following sequence: (1) whether plaintiff

failed to properly exhaust his administrative remedies with respect to Smith; (2) whether

plaintiff's state law negligence claim for monetary damages complied with the California Tort

1   Claims Act; (3) whether plaintiff properly alleges a claim of "deliberate indifference" against

2   defendants under the Eight Amendment; and (4) whether defendants are entitled to qualified

3   immunity with respect to plaintiff's Eight Amendment claim.

4   II.   Discussion

5         A.   Whether Plaintiff Properly Exhausted His Administrative Remedies[1]

6              1.   Legal Standards

7         The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be

8   brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

9   a prisoner confined in any jail, prison, or other correctional facility until such administrative

10  remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners

11  must exhaust their administrative remedies regardless of the relief they seek, i.e., whether

12  injunctive relief or money damages, even though the latter is unavailable pursuant to the

13

14        [1]   Because a motion to dismiss for failure to exhaust administrative remedies is
     considered to be an unenumerated motion under Fed. R. Civ. P. Rule 12(b), "the court may look
     beyond the pleadings," to determine disputed issues of fact.  Wyatt v. Terhune, 315 F.3d 1108,
15   1119 (9th Cir. 2003).

16        The court finds that plaintiff was accorded adequate notice of the requirements for
     opposing a motion to dismiss based on an alleged failure to exhaust administrative remedies.  On
17   July 6, 2012, the Ninth Circuit Court of Appeals issued its decision in Woods v. Carey, 684 F.3d
     934 (9th Cir. 2012), which underscored the Court of Appeals' holding in Wyatt v. Terhune, 315
18   F.3d 1108, 1115, 1120 n.14 (9th Cir. 2003), that a pro se prisoner plaintiff must be accorded
     timely, fair and adequate notice of the requirements for opposing a motion to dismiss for failure
19   to exhaust administrative remedies.  Accord Stratton v. Buck, 2012 WL 4094937, at *3 (9th Cir.
     Sept. 19, 2012).  Shortly thereafter, on July 19, 2012, defendants provided plaintiff with notice of
20   the pertinent requirements (see Dkt. No. 25), and obtained a twenty-eight day extension of time
     for plaintiff to oppose the motion to dismiss (see id., see also Dkt. No. 27).  Apparently, these
21   documents crossed plaintiff's opposition in the mail -- plaintiff's opposition was signed by
     plaintiff on July 18, 2012, and filed with the court on July 23, 2012.  (See Dkt. No. 26.)
22   Discerning this problem, defendants, on July 26, 2012, filed and served a "Notice of Intent to
     Reply to Plaintiff's Supplemental Briefing," emphasizing that plaintiff had been accorded an
23   additional twenty-eight days to supplement his opposition, or file an amended opposition.  (See
     Dkt. No. 28.)  Plaintiff did not respond to the court's order, or to defendants' "Notice," despite
24   ample opportunity to do so.  It is reasonable to conclude that plaintiff made a deliberate decision
     to rest on his original opposition.  Accordingly, the court finds that plaintiff was accorded
25   adequate notice of the requirements for opposing a motion to dismiss based on an alleged failure
     to exhaust administrative remedies, pursuant to Wyatt, 315 F.3d at 1115, 1120 n.14; Woods, 684
26   F.3d 934; and Stratton, 2012 WL 4094937, at *3.

administrative grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion also requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81 (2006).

The PLRA requires that administrative remedies be exhausted prior to filing suit.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  However, the exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003) (failure to exhaust is an affirmative defense).  Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense.  Id. at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at 1119.  "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust -- a procedure closely analogous to summary judgment -- then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."  Id. at 1120 n.14.  When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims).  Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."  Jones, 549 U.S. at 221.

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures."  Jones, supra, 549 U.S. at 218.  In California, prisoners are required to lodge their administrative complaint on a CDC Form 602, which requires only that the prisoner "describe the problem and action requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth

4

Circuit Court of Appeals adopted the standard enunciated by the Seventh Circuit, which provides that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).  Thus, in California, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  Jones, 549 U.S. at 219.  It is nonetheless appropriate to require that a prisoner demonstrate, through the administrative grievance process and consistent with the PLRA, that he has standing to pursue his claims against a particular defendant.  "[A]t an irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (quoting Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979).

////
////
////
////
////
////
////

5

1          2.     <u>Analysis</u>[2]

2          During the relevant period of time, plaintiff exhausted a single administrative

3    grievance and submitted three others.  Two of the submitted grievances were screened out at the

4    informal level.  A third grievance was partially granted at the informal level and plaintiff failed to

5    pursue it any further.  These grievances have been identified, and duplicated for the court, by L.

6    D. Zamora, the Chief of the Office of the Third Level Appeals for California Correctional Health

7    Services, and D. Miner, the acting health care appeals coordinator at MCSP.  <u>See</u> Zamora Decl.

8    (Dkt. No. 22-3); Miner Decl. (Dkt. No. 22-2).  The court's review of all of these grievances, only

9    one of which reached the Director's Level Review, demonstrates that plaintiff properly exhausted

10   his claims against Hashimoto, but failed to do so with respect to his claims against Smith.

11         In Log No. MCSP-16-09-12270, initially submitted on August 2, 2009, plaintiff

12   alleged that he had submitted a request to receive care for his alleged medical issues, which had

13   been screened out on June 23, 2009, and was "resubmitted to and forwarded to Health Care

14   Appeals for processing."  (Dkt. No. 14 at 8.)  Plaintiff further alleged that he had "waited a full

15   30 days to hear back from [Health Care Appeals] in hopes of receiving proper health care to no

16   avail."  (<u>Id.</u>)  He also alleged that he filled out a "sick slip," but that "visits to the doctor have

17   rendered no helpful solutions."  (<u>Id.</u>)  In this grievance, plaintiff requested to "receive help for my

18   back so as to keep me from existing in a constant state of pain," and to "receive an effective

19   adequate pain managment [sic] program" to alleviate his alleged symptoms.  (<u>Id.</u>)

20   ////

21

22         [2]   Plaintiff does not include within his amended complaint some of the supporting
     documents that he attached to his original complaint, including the Director's Level Decision.
23   (<u>See</u> Dkt. No. 1 at 12, 15-28.)  Nevertheless, the court considers the attachments to the original
     complaint as part of the allegations made in his amended complaint for purposes of assessing
24   whether plaintiff failed to exhaust all available administrative remedies.  <u>See</u> <u>Akhtar v. Mesa</u>, __
     F.3d __, 2012 WL 5383038, at *4 (9th Cir. Nov. 5, 2012) (citing <u>Lacey v. Maricopa County</u>, 693
25   F.3d 896, 925-28 (9th Cir. 2012)) ("Under recent case law, [the] complaint was not entirely
     superseded when the amended complaint was filed, and so could have been considered by the
26   magistrate judge in considering exhaustion.").

This grievance was denied at the First Level Review, by Hashimoto, on the grounds that "medical car [sic] has been appropriate." (Id. at 12.) On October 13, 2009, the grievance was denied at the Second Level Review on similar grounds, with the reviewer noting that plaintiff's medical treatment at MCSP "has been appropriate and timely." (Id. at 16-17.) At the Director's Level Review on January 25, 2010, plaintiff's grievance was denied for the same reasons stated in the Second Level Review. (Dkt. No. 1 at 26-28.) Therefore, the claim was exhausted pursuant to the Director's Level Decision.

Plaintiff also submitted two other appeals, on June 24, 2009, and November 4, 2009, respectively, which were denied and screened out at the informal level on June 25, 2009, and November 4, 2009, respectively. (Dkt. No. 22-2 at ¶ 10.) Plaintiff submitted an additional appeal on October 24, 2008, Log No. MCSP-HC-11029441, complaining about the medical care he had received. (Id. ¶¶ 11-12.) This grievance was partially granted at the informal level on November 12, 2008, and plaintiff did not pursue this appeal beyond this level.

Based on the foregoing, the court concludes that plaintiff has exhausted his administrative remedies with respect his claims against Hashimoto because Hashimoto was a member of the medical staff that treated plaintiff during the period challenged in plaintiff's exhausted grievance. (See Dkt. No. 14 at 17.) Hashimoto examined plaintiff on July 20, 2009, prior to plaintiff's filing of his grievance, and conducted the First Level Review of plaintiff's grievance, which plaintiff appealed. Plaintiff's exhausted grievance was sufficient to alert the prison to an alleged problem with the care Hashimoto had proffered to plaintiff. See Griffin, 557 F.3d at 1120.

However, the court also concludes that plaintiff has failed to exhaust the grievance process with respect to Smith. Plaintiff's claims against Smith arise from his denial of an MRI scan that plaintiff had requested for his shoulder. (See id. at 15.) This denial occurred on May 11, 2010, after plaintiff's grievance had been exhausted on January 25, 2010. (Id.) Therefore, chronologically, it is impossible for plaintiff's grievance to have covered this conduct.

7

1   Moreover, plaintiff alleges no facts which suggest that Smith's conduct predated the conclusion

2   of plaintiff's grievance process, or that suggest that Smith engaged in any other conduct that fell

3   under the subject matter of plaintiff's grievance.  Accordingly, the court dismisses all of

4   plaintiff's claims against Smith for plaintiff's failure to properly exhaust available administrative

5   remedies.

6          B.      Whether Plaintiff Complied With the California Tort Claims Act in Support of

7                  His State Law Negligence Claims

8                  Defendants argue that plaintiff failed to timely file his claim with the California

9   Victim Compensation and Government Claims Board ("VCGCB" or "Board") pursuant to the

10  California Tort Claims Act ("CTCA"), thus requiring this court to dismiss plaintiff's pendant

11  state law claims.  (Def.'s Mot. for Summ. J. at 9-10.)

12                 1.  Legal Standards

13                 Under the CTCA, set forth in California Government Code sections 810 et seq., a

14  plaintiff may not bring a suit for monetary damages against a public employee or entity unless the

15  plaintiff first presented the claim to the Board, and the Board acted on the claim, or the time for

16  doing so expired.  "The Tort Claims Act requires that any civil complaint for money or damages

17  first be presented to and rejected by the pertinent public entity."  Munoz v. California, 33 Cal.

18  App. 4th 1767, 1776 (1995).  The purpose of this requirement is "to provide the public entity

19  sufficient information to enable it to adequately investigate claims and to settle them, if

20  appropriate, without the expense of litigation."  City of San Jose v. Superior Court, 12 Cal.3d

21  447, 455 (1974) (citations omitted).  Compliance with this "claim presentation requirement"

22  constitutes an element of a cause of action for damages against a public entity or official.  State v.

23  Superior Court (Bodde), 32 Cal. 4th 1234, 1244 (2004).  Thus, in the state courts, "failure to

24  allege facts demonstrating or excusing compliance with the claim presentation requirement

25  subjects a claim against a public entity to a demurrer for failure to state a cause of action."  Id. at

26  1239 (fn. omitted).

1        Consistently, federal courts require compliance with the CTCA for pendant state

2   law claims that seek damages against state public employees or entities.  Willis v. Reddin, 418

3   F.2d 702, 704 (9th Cir. 1969); Mangold v. California Public Utilities Commission, 67 F.3d 1470,

4   1477 (9th Cir. 1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C. §

5   1983, may proceed only if the claims were first presented to the state in compliance with the

6   claim presentation requirement.  United States v. California, 655 F.2d 914, 918 (9th Cir. 1980);

7   Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 627 (9th Cir. 1988); Butler v.

8   Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

9        To be timely, a claim must be presented to the VCGCB "not later than six months

10  after the accrual of the cause of action."  Cal. Govt. Code § 911.2.  Should a claimant miss this

11  deadline, the claimant may file a written application for leave to file a late claim, within a year

12  after the accrual of the cause of action.  Id., § 911.4.  If the Board denies the application, the

13  notice of denial must include a warning to the claimant that no court action may be brought on

14  the claim unless the claimant first files a petition with the appropriate court requesting relief from

15  the claim presentation requirement, and obtains a court order granting such relief.  Id., § 911.8.

16  Failure to obtain such relief bars any suit on the claim.

17       2.   Analysis

18       As an initial matter, the court addresses the fact that plaintiff attempts to rely on

19  exhibits outside of his complaint to substantiate his claim that he complied with the CTCA.

20  When considering a motion to dismiss, the court is generally limited to consideration of the

21  allegations contained in the plaintiff's complaint and any documents attached thereto or

22  incorporated by reference.  Haskell v. Time, Inc., 857 F. Supp. 1392, 1396 (E.D. Cal. 1994)

23  ("Ordinarily, a motion to dismiss . . . is addressed to the four corners of the complaint without

24  consideration of other documents or facts outside of the complaint . . . . [T]he complaint is

25  deemed to include any documents attached to it as exhibits as well as any documents

26  incorporated into the complaint by reference.").  Plaintiff fails to allege any facts in his complaint

9

1    indicating that he complied with the CTCA; however, in his opposition to defendants' motion to

2    dismiss, plaintiff alleges that he did submit his claim to the Board.  (Opp'n. at 2-3.)  Specifically,

3    plaintiff argues in his opposition that he submitted a claim to the Board on July 14, 2011, that the

4    Board sent plaintiff a letter on August 24, 2011, to inform him that his claim form was

5    incomplete, and that he did not receive this letter or any notice about the deficiency of his claim

6    form until defendants submitted the letter as an exhibit to their motion to dismiss.  (Id.)  In

7    addition to other exhibits, plaintiff attaches a document to his opposition detailing his incoming

8    and outgoing mail at MCSP, which notes that plaintiff sent mail to the Board on July 14, 2011.

9    (Id. at 17 [Exhibit C].)

10                 In order to accord plaintiff the opportunity to rely on all of his evidence, the court

11   has considered all pertinent exhibits, including plaintiff's exhibits submitted in support of his

12   opposition.  As a result, defendants' motion to dismiss plaintiff's state tort claims, pursuant to

13   Federal Rule of Civil Procedure 12(b)(6), is automatically converted to a summary judgment

14   motion.  See Rules 12(d), and 56, Fed. R. Civ. P; Lee v. City of Los Angeles, 250 F.3d 668, 688

15   (9th Cir. 2001).[3]  The conversion of a motion to dismiss to a motion for summary judgment

16

---

17          [3]  Summary judgment, in whole or in part, is appropriate when the standard set forth in
     Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should be rendered  if . . .
18   there is no genuine issue as to any material fact, and . . . the movant is entitled to judgment as a
     matter of law."  Fed. R. Civ. P. 56(c).
19
                     Under summary judgment practice, the moving party always bears
20                   the initial responsibility of informing the district court of the basis
                     for its motion, and identifying those portions of "the pleadings,
21                   depositions, answers to interrogatories, and admissions on file,
                     together with the affidavits, if any," which it believes demonstrate
22                   the absence of a genuine issue of material fact.

23   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), quoting Federal Rule of Civil Procedure
     56(c).  "[A] complete failure of proof concerning an essential element of the nonmoving party's
24   case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary
     judgment should be granted.  Id.
25          If the moving party meets its initial responsibility, the burden then shifts to the opposing
     party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec.
26   Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

1  requires that the nonmoving party be provided adequate notice and an opportunity to present all

2  pertinent material.  The court finds that plaintiff was accorded notice that the court would

3  consider material outside the pleadings, pursuant to defendants' July 19, 2012 Woods notice and

4  the court's twenty-eight day extension of time to submit additional materials relevant to

5  administrative exhaustion (see n.1 and related text, supra).  See Grove v. Mead School District,

6  753 F.2d 1528, 1533 (9th Cir.), cert. denied, 474 U.S. 826 (1985) ("Notice occurs when a party

7  has reason to know that the court will consider matters outside the pleadings.").  Although the

8  Woods notice was limited to the issue of administrative exhaustion, it appears clear that plaintiff

9  has submitted all materials relevant to his state tort claim.  No party asserts that any evidence

10  pertinent to this claim has not yet been submitted.

11  ////

12  ////

13

14  existence of a factual dispute, the opposing party may not rely upon the allegations or denials of
    its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
15  admissible discovery material, in support of its contention that a dispute exists.  See Fed. R. Civ.
    P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the
16  disputed fact is material, i.e., a fact that might affect the outcome of the suit under governing law,
    see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific
17  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,
    the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see
18  Anderson, 477 U.S. at 248; T.W. Elec. Serv., 809 F.2d at 631.
            In the endeavor to establish the existence of such a factual dispute, the opposing party
19  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
20  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary
    judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
21  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e), Advisory
    Committee's note on 1963 amendments).
22          In resolving a summary judgment motion, the evidence of the opposing party is to be
    believed.  Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the
23  facts placed before the court must be drawn in favor of the opposing party.  Matsushita, 475 U.S.
    at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
24  obligation to produce a factual predicate from which the inference may reasonably be drawn.
    Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d
25  898, 902 (9th Cir. 1987).  "Where the record taken as a whole could not lead a rational trier of
    fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S.
26  at 586 (citation omitted).

1    To substantiate their argument that plaintiff failed to comply with the CTCA,

2   defendants provide, as part of their request for judicial notice (Dkt. No. 23),[4] a letter dated

3   August 24, 2011, from the Board to plaintiff, which states that plaintiff needed to resubmit his

4   claim to the Board because plaintiff had failed to include in his claim the alleged date on which

5   his injury occurred.  (Id. at 4[Exhibit A].)  Defendants further argue that the Board never received

6   a re-submitted claim form from plaintiff.  (Mot. to Dismiss at 10.)  Based on defendants' asserted

7   facts, plaintiff never properly filed an application.  Nevertheless, plaintiff attempts to contest

8   defendant's assertion by arguing that the record defendants have submitted is incomplete.

9   (Opp'n. at 2.)  Plaintiff further argues that he did not resubmit his claim to the Board in a timely

10  manner because he never received the letter or any other notice about the deficiencies in his

11  claim until he read defendants' motion to dismiss.  (Id.)  However, for the reasons stated below,

12  plaintiff's contentions do not raise a material issue of fact because, even under plaintiff's version

13  of the facts, plaintiff failed to file his claim within the relevant period.

14    Neither party disputes that defendant[5] was acting as a public employee for

15  purposes of the CTCA; therefore, plaintiff was required to comply with the requirements of the

16  Act before he could submit his state law claims in this court.  See Mangold, 67 F.3d at 1477.

17  Plaintiff was required to submit his claim to the Board, under any circumstances (including leave

18

19    [4]  In support of their motion to dismiss, defendants request that the court take judicial
    notice, pursuant to Federal Rule of Evidence 201, of a document styled as "Certification of Eric
20  Rivera, Custodian of Records of the State of California's Victim Compensation and Government
    Claims Board ("Board"), and the Board's certified records of Claim G598913."  See Fed. R.
21  Evid. 201 (a court may take judicial notice of facts that are capable of accurate determination by
    sources whose accuracy cannot reasonably be questioned).  See also, MGIC Indem. Co. v.
22  Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th
    Cir. 1980) (court may take judicial notice of court records).  Defendants attach both documents to
23  their request as "Exhibit A."  (Dkt. No. 23-1.)  Both documents are records of VCGCB, a state
    government agency, and plaintiff does not dispute the documents' validity.  Accordingly, the
24  court takes judicial notice of both documents and grants defendants request.  See City of
    Sausalito v. O'Neill, 386 F.3d 1186, 1224 n. 2 (9th Cir. 2004) ("We may take judicial notice of a
25  record of a state agency not subject to reasonable dispute.").

26    [5]  Because the court dismisses all claims against Smith, it uses the term "defendant" to
    refer to Hashimoto for the remainder of these findings and recommendations.

1    to file a late claim), no later than one year after his cause of action accrued.  <u>See</u> Cal. Govt. Code

2    §§ 911.2, 911.4; <u>Brandon G. v. Gray</u>, 111 Cal. App. 4th 29, 34 (2003) (citing <u>Munoz v. State of</u>

3    <u>California</u>, 33 Cal. App. 4th 1767, 1779 (1995)).[6]  However, plaintiff's evidence shows that

4    plaintiff failed to file within one year after the date he alleges defendant caused his injury.

5          For purposes of the CTCA, the "accrual date" of a state tort claim is "the time

6    'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and

7    the consequent 'liability arises.'" <u>K.J. v. Arcadia Unified Sch. Dist.</u>, 172 Cal. App. 4th 1229,

8    1239 (2009).  Liberally construed, plaintiff's complaint appears to state a medical malpractice

9    claim against defendant; plaintiff alleges that defendant acted negligently in providing him

10    medical services in the aftermath of the accident he was involved in.  (<u>See</u> Compl. at 3-4.)  "In

11    medical malpractice cases, the action accrues on claimants' actual or constructive discovery of

12    the malpractice." <u>Phillips v. Desert Hosp. Dist.</u>, 49 Cal. 3d 699, 705 (1989).  Plaintiff fails to

13    allege an explicit accrual date in his complaint.  However, based on the evidence plaintiff

14    submits, the injurious conduct alleged against Hashimoto must have occurred during the period

15    between July 20, 2009, when Hashimoto examined plaintiff and administered treatment in the

16    form of acetaminophen (<u>see</u> Compl. at 17), and September 9, 2009, when Hashimoto conducted

17    the First Level Review of plaintiff's grievance and prescribed Naproxen (<u>see id.</u> at 12.).  Plaintiff

18    provides no other evidence suggesting that Hashimoto engaged in any conduct beyond this time

19    frame with respect to plaintiff's medical care at MCSP.

20          After Hashimoto's First Level Review, plaintiff wrote a letter stating his

21    dissatisfaction with the "First Level Appeal Response." (<u>Id.</u> at 14.)  In this letter, plaintiff

22

23        [6]  The period for initially submitting a tort claim to the Board is not subject to the
provisions that otherwise toll, for up to two years, the limitations period for a state prisoner to

24    commence a civil action against a public entity or employee.  <u>See</u> Cal. Civ. Proc. § 352.1(b)
("This section does not apply to any action against a public entity or public employee upon a

25    cause of action for which a claim is required to be presented . . . ."); <u>Ellis v. City of San Diego</u>,
176F.3d 1183, 1190 (9th Cir. 1999) (dismissing with prejudice plaintiff's state law claims

26    against defendant public entities because presentation of the claim to Board was made more than
one year after the accrual of the cause of action).

complained of Hashimoto's decision that "medical care has been appropriate" and of his need for further treatment beyond the medication Hashimoto prescribed him. (Id. ["Surely pain medicine . . . is not the only form of treatment in this case. I need to have these injuries treated . . . .].) This statement indicates that plaintiff discovered Hashimoto's alleged wrongful conduct at or prior to the time he wrote the letter, thus evidencing that plaintiff's cause of action accrued during this period. See Phillips, 49 Cal. 3d at 705. Plaintiff's letter is not dated; however, the Health Care Manager at MCSP submitted a Second Level Appeal Response to plaintiff's letter on October 13, 2009. (Id. at 16-17.) Therefore, based on the evidence plaintiff has submitted, the court concludes that the accrual date for plaintiff's cause of action against Hashimoto occurred sometime during the period between September 9, 2009, and October 13, 2009.

Based on plaintiff's exhibit detailing his incoming and outgoing mail at MCSP, the earliest mailing plaintiff made to the Board occurred on July 14, 2011 (Opp'n. at 17), more than one full year after the latest possible accrual date of October 13, 2009. Assuming that this mailing included plaintiff's claim form, plaintiff failed to submit his claim to the Board within the required time period. See Cal. Govt. Code § 911.4. In the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity [or employee] to a demurrer for failure to state a cause of action." State v. Superior Court (Bodde) (2004) 32 Cal.4th 1234, 1239. In federal court, the failure to allege facts that demonstrate or excuse compliance with the state claim presentation requirements renders the state law claim to dismissal. Mangold, supra, 67 F.3d at 1477; Karim–Panahi, supra, 839 F.2d at 627. Thus, plaintiff fails to raise a genuine issue of material fact with respect to defendant's factual assertion that plaintiff failed to make a timely claim filing with the Board. Accordingly, the court grants summary judgment in Hashimoto's favor with respect to plaintiff's state law claims.

////

////

C.     Whether Plaintiff's Complaint States a Claim That Hashimoto Violated Plaintiff's
       Rights Under the Eighth Amendment of the United States Constitution

Defendants assert that plaintiff's Eighth Amendment claim that Hashimoto acted with deliberate indifference to plaintiff's serious medical needs should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss at 5-8.)

1.     Legal Standards

a.     Failure to State a Cognizable Claim

The Federal Rules of Civil Procedure authorize motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement [of facts] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson, 551 U.S. 89 (internal citations omitted).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that

15

1    were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

2                              b.        Deliberate Indifference

3               Inadequate medical care does not constitute cruel and unusual punishment

4    cognizable under § 1983 unless the mistreatment rose to the level of "deliberate indifference to

5    serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

6               In the Ninth Circuit, the test for deliberate indifference consists of
                two parts. First, the plaintiff must show a serious medical need by
7               demonstrating that failure to treat a prisoner's condition could
                result in further significant injury or the 'unnecessary and wanton
8               infliction of pain.' Second, the plaintiff must show the defendant's
                response to the need was deliberately indifferent. This second
9               prong—defendant's response to the need was deliberately
                indifferent—is satisfied by showing (a) a purposeful act or failure
10              to respond to a prisoner's pain or possible medical need and (b)
                harm caused by the indifference. Indifference may appear when
11              prison officials deny, delay or intentionally interfere with medical
                treatment, or it may be shown by the way in which prison physicians
12              provide medical care.

13   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted).

14              To establish deliberate indifference, a plaintiff must show that defendants knew

15   of and disregarded an excessive risk to his health or safety.  Farmer v. Brennan, 511 U.S. 825,

16   837 (1994).  A prison official must "both be aware of facts from which the inference could be

17   drawn that a substantial risk of serious harm exists, and he must also draw the inferences."  Id.

18   The nature of a defendant's responses must be such that the defendant purposefully ignores or

19   fails to respond to a prisoner's pain or possible medical need in order for deliberate indifference

20   to be established.  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part

21   on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  Deliberate

22   indifference may occur when prison officials deny, delay, or intentionally interfere with medical

23   treatment, or may be demonstrated by the way in which prison officials provide medical care.

24   Id. at 1059–60.

25              A showing of merely inadvertent or even negligent medical care is not enough to

26   establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124,

                                                  16

1   1130 (9th Cir. 1998).  A mere difference of opinion concerning the appropriate treatment cannot

2   be the basis for an Eighth Amendment violation.  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th

3   Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, an inmate must

4   allege facts sufficient to indicate a culpable state of mind on the part of prison officials.  <u>Wilson</u>

5   <u>v. Seiter</u>, 501 U.S. 294, 297–99 (1991).  Accordingly, a difference of opinion about the proper

6   course of treatment is not deliberate indifference nor does a dispute between a prisoner and

7   prison officials over the necessity for or extent of medical treatment amount to a constitutional

8   violation.  <u>See</u>, <u>e.g.</u>, <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004); <u>Sanchez v. Vild</u>,

9   891 F.2d 240, 242 (9th Cir. 1989).

10      2.   <u>Analysis</u>

11      Plaintiff's complaint sets forth sufficient facts to show that he had a serious

12   medical need.  Plaintiff alleges that as a result of the vehicle accident he was in, he "sustained

13   neck, back, shoulder injury pain and . . . frequent headaches [and] dizzy spells."  (Compl. at 3.)

14   He also attaches an "Inmate/Parolee Appeal Form," dated August 2, 2009, and a handwritten

15   document styled as "Exhibit # 1," dated July 5, 2011, as exhibits to his amended complaint.  (<u>Id.</u>

16   at 5, 8-11.)  In the appeal form, plaintiff stated that he was "existing in a constant state of pain"

17   as result of his injuries."  (<u>Id.</u> at 8.)  In Exhibit # 1, plaintiff alleged that he "continue[d] to

18   experience pain, headaches and dizziness" after being "denied adequate medical treatment."  (<u>Id.</u>

19   at 5.)  These allegations are sufficient to show that plaintiff had a serious medical need and

20   defendant does not dispute the sufficiency of plaintiff's allegations on this point.

21      Whether plaintiff has sufficiently alleged a claim of deliberate indifference to his

22   serious medical needs is a closer call.  The pertinent allegations and supporting facts are as

23   follows.  In his complaint and exhibits attached thereto, plaintiff alleges that he was initially

24   evaluated for his medical complaints on July 3, 2009 by Physician's Assistant J. Fortune, who

25   determined that plaintiff's pain was "not constant," advised plaintiff to continue on his

26   medications, and scheduled plaintiff for a follow up examination by Hashimoto.  (Compl. at 17.)

1   Hashimoto conducted an examination of plaintiff on July 30, 2009, when plaintiff reportedly

2   stated that he had "good and bad days" with respect to his "chronic neck and back pain." (Id.)

3   Based on this examination, Hashimoto prescribed acetaminophen to plaintiff to help him with his

4   pain and "did not request a follow up or any additional treatments." (Id.)

5             On August 2, 2009, plaintiff filed his relevant administrative grievance, stating

6   that his "visits to the Doctor have rendered no helpful solutions." (Id. at 8-11.)  Hashimoto

7   conducted the First Level Review of plaintiff's claim on September 9, 2009, and found that

8   plaintiff's "[m]edical car [sic] has been appropriate." (Id. at 12.)  During this review, plaintiff

9   stated that he was "usually okay," but that he had "some bad days and experience[d] pain with

10   certain movements." (Id. at 17.)  Hashimoto prescribed Naproxen to plaintiff to help control his

11   pain and "advised [plaintiff] to submit a request to be seen by the Medical Staff for any future

12   concerns." (Id.)  Plaintiff now alleges that "[m]edical staff has failed to remedy my needs," that

13   he was "denied adequate medical treatment," and requests "proper medical treatment." (Id. at 3,

14   5.)

15             To the extent that plaintiff attempts to premise his deliberate indifference claim

16   against Hashimoto on allegations that the medical treatment proffered by Hashimoto was

17   inadequate, plaintiff's complaint fails to set forth facts sufficient to allege that Hashimoto acted

18   with deliberate indifference to plaintiff's medical needs.  Construed liberally, the court

19   determines that these allegations of "deliberate indifference" against Hashimoto are premised on

20   the theory that Hashimoto's diagnosis and treatment of plaintiff's alleged ailments were

21   inadequate.

22             In Estelle, supra, 429 U.S. 97, the Supreme Court held the Court of Appeals in

23   error for reversing a district court's decision to dismiss a prisoner's claim of deliberate

24   indifference against his treating doctor for failure to state a claim on a factual basis similar to the

25   one alleged by plaintiff in the current case.  In Estelle, the prisoner alleged that he had sustained a

26   back injury, among other injuries, while working and that he had sought treatment from the

1   prison's medical staff.  Id. at 99-100.  Several prison doctors examined the prisoner, including

2   the defendant doctor, who examined the prisoner and prescribed "bed rest, muscle relaxants and

3   pain relievers."  Id. at 107.  In claiming deliberate indifference, the prisoner alleged in his

4   complaint that the defendant doctor should have done more "by way of diagnosis and treatment."

5   Id.  The Court determined that these allegations failed to state a cognizable claim of deliberate

6   indifference against the defendant doctor, "both in his capacity as treating physician and as

7   medical director of the Corrections Department," because the allegations called into question a

8   matter of medical judgment and amounted, at most, to medical malpractice, which was not

9   sufficient under a claim of deliberate indifference.  Id.  Similarly, here, plaintiff attempts to allege

10  that the treatment offered by Hashimoto was inadequate in remedying his pain, making

11  statements such as "visits to the doctor have rendered no helpful solutions," "[m]edical staff has

12  failed to remedy my needs," and that he was "denied adequate medical treatment,"  (Compl. at 3,

13  5, 8.)  At most, these allegations amount to a state law tort claim for medical malpractice or

14  negligence, not that of "deliberate indifference" under the Eighth Amendment.  See Estelle, 429

15  U.S. at 107.

16          Nevertheless, a liberal construction of plaintiff's complaint demonstrates that

17  plaintiff alleges additional facts that do give rise to a colorable claim of "deliberate indifference."

18  Plaintiff attaches as an exhibit to his complaint a letter he wrote that states his dissatisfaction

19  with the results of his First Level Review (Compl. at 14), pursuant to which Hashimoto found

20  that plaintiff's medical care had been appropriate and prescribed Naproxen.  In this letter,

21  plaintiff alleges that "a treatment plan has been discussed, [but] no action has followed" and that

22  he "was told months ago that Physical Therapy was indicated but for some reason it has not

23  happened yet."  (Id.)  Furthermore, plaintiff alleges in his complaint that the MCSP medical staff,

24  which includes Hashimoto, "continue to downplay or disregard my complaints."  (Id. at 3.)

25  Although plaintiff does not explicitly allege that Hashimoto's specific actions were deliberately

26  indifferent, such specificity is not necessary at the dismissal stage of the proceedings.  See

1    Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007) ("At

2    this early stage of the proceedings, [plaintiff] does not need to show with great specificity how

3    each defendant contributed to the violation of his constitutional rights. Rather, he must state the

4    allegations generally so as to provide notice to the defendants and alert the court as to what

5    conduct violated clearly established law.").  The court finds that these allegations create a

6    colorable claim that Hashimoto engaged in "a purposeful act or failure to respond to [plaintiff's]

7    pain or possible medical need."  Jett, 439 F.3d at 1096.  Moreover, plaintiff alleges that he

8    "continue[s] to experience pain, headaches and dizziness," indicating that continuing harm may

9    have resulted from this alleged indifference.  Id.  Taken together and construed liberally, the

10    court finds that these allegations sufficiently allege that Hashimoto acted with deliberate

11    indifference in his treatment of plaintiff.

12          D.      Whether Defendant is Entitled to Qualified Immunity

13          Defendants contend that they are entitled to qualified immunity, thus requiring the

14    court to dismiss plaintiff's claims. (Mot. to Dismiss at 10-11.)  "Qualified immunity balances

15    two important interests -- the need to hold public officials accountable when they exercise power

16    irresponsibly and the need to shield officials from harassment, distraction, and liability when they

17    perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The objective

18    of the qualified immunity doctrine is to ensure "that 'insubstantial claims' against government

19    officials be resolved prior to discovery and on summary judgment if possible."  Anderson v.

20    Creighton, 483 U.S. 635, 640 n.23 (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818-19

21    (1982)).  Meeting this objective requires that immunity questions be resolved "at the earliest

22    possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

23          "The doctrine of qualified immunity protects government officials from liability

24    for civil damages insofar as their conduct does not violate clearly established statutory or

25    constitutional rights of which a reasonable person would have known."  Pearson, 555 U.S. at

26    231.  The defendant bears the burden of establishing qualified immunity.  Crawford-El v. Britton,

1  523 U.S. 574, 586-87 (1998).  The Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001),

2  outlined a two-step approach to qualified immunity.  The first step requires the court to ask

3  whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged

4  show the officer's conduct violated a constitutional right?"  <u>Saucier</u>, 533 U.S. at 201.  The

5  second inquiry is whether the right was clearly established, in other words, "whether it would be

6  clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u>  In

7  <u>Pearson</u>, <u>supra</u>, 555 U.S. 223, the Supreme Court gave district courts discretion to grant qualified

8  immunity on the basis of the "clearly established" prong alone, without deciding in the first

9  instance whether any right had been violated.  <u>Id.</u> at 236; <u>accord</u> <u>Ashcroft v. al-Kidd</u>, 131 S.Ct.

10  2074, 2080 (2011).

11      Although plaintiff's rights under the Eighth Amendment are clearly established, it

12  is premature for the court to address defendants' qualified immunity defense.  Although the

13  defense may prevail on a motion for summary judgment, the assessment whether Hashimoto was

14  deliberately indifferent to plaintiff's serious medical needs is too fact-dependent to resolve on a

15  motion to dismiss.  In the absence of a fully developed record, qualified immunity does not apply

16  where the facts, construed in the light most favorable to the party asserting the injury, show a

17  violation of a clearly established constitutional right of which a reasonable official should be

18  aware.  <u>Anderson v. Creighton</u>, <u>supra</u>, 483 U.S. at 640.

19      For these reasons, the court recommends denial of defendants' motion to dismiss

20  plaintiff's Eighth Amendment claim, both on the merits and on qualified immunity grounds.

21  These rulings should be without prejudice, subject to reconsideration pursuant to a summary

22  judgment motion.

23  IV.   <u>Conclusion</u>

24      For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

25      1.  Defendants' motion to dismiss (Dkt. No. 22), should be granted in part;

26      2.  Defendant Smith should be dismissed from this action without prejudice;

3.  Summary judgment in favor of defendant Hashimoto should be granted with respect to plaintiffs pendent state law claims for damages;

4.  This action should proceed against defendant Hashimoto based on plaintiff's Eighth Amendment deliberate indifference claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   December 6, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE